**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000351
23-FEB-2026
07:57 AM
Dkt. 42 SO**

NOS. CAAP-23-0000351 and CAAP-24-0000334

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ASSOCIATION OF APARTMENT OWNERS OF WAIKIKI BANYAN,
Applicant-Appellee,
v.
RONALD LEIMKUHLER and TRUNG HUA, Respondents-Appellants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(SPECIAL PROCEEDING NO. 1CSP-22-0000323)

SUMMARY DISPOSITION ORDER
(By:  Nakasone, Chief Judge, Leonard and Guidry, JJ.)

In this consolidated appeal,[1] Respondents-Appellants
Ronald Leimkuhler (**Leimkuhler**) and Trung Hua (**Hua**)
(collectively, **Owners**) challenge the Circuit Court of the First
Circuit's (**Circuit Court**)[2] two orders granting motions to enforce
a settlement agreement between Owners and their homeowners'

---

[1]    We consolidated CAAP-23-351 and CAAP-24-334 as related appeals on
December 9, 2024.

[2]    The Honorable Gary W.B. Chang presided.

association, Applicant-Appellee Association of Apartment Owners of Waikiki Banyan (**Association**), for an underlying dispute arising out of remodeling work on Owners' unit.  We vacate and remand.

In CAAP-23-351, Owners appeal from the April 24, 2023 "Order Granting in Part and Denying in Part [Association]'s Motion to Enforce Settlement Agreement and For Sanctions" (**First Order Enforcing Settlement**).  Owners raise five points of error (**POEs**),[3] contending that the Circuit Court erred by: **(1)** concluding there were no "genuine issues of material fact regarding an agreement" between Owners and the Association, based on its finding that "an email message summarizing 'essential terms' . . . . was an enforceable agreement"; **(2)** "failing to hold an evidentiary hearing as required by this Court's mandatory precedent" despite the existence of genuine issues of material fact; **(3)** "making credibility determinations without conducting an evidentiary hearing or trial"; **(4)** "fail[ing] to rule on the impact of the Association's use of [a] fraudulent fine threat to compel a settlement"; and **(5)** "failing to rule on whether the Association's . . . fine threat was an unfair or deceptive act in violation of [Unfair and Deceptive Practices (**UDAP**)], rendering the alleged settlement agreement void and unenforceable."

In CAAP-24-334, Owners appeal from the April 4, 2024 "Order Granting [Association]'s Second Motion to Enforce Settlement Agreement and For Sanctions" (**Second Order Enforcing Settlement**).  In this second appeal arising out of the same dispute, Owners repeat their contention that the Circuit Court erred by failing to hold an evidentiary hearing, as well as by

---

[3]     We have numbered Owners' points "A" through "E".  See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) (requiring numbered POEs).

"finding [Owners] engaged in bad faith by refusing to sign a judicially rewritten settlement agreement."

We conclude in CAAP-23-351 that the Circuit Court erred in the First Order Enforcing Settlement and should have held an evidentiary hearing on the disputed material issues of fact. Because this result is dispositive, we need not address the remaining contentions in CAAP-23-351 and point of error in CAAP-24-334.[4]

"A motion to enforce a settlement agreement is reviewed by the same standard as a motion for summary judgment." McKenna v. Ass'n of Apartment Owners of Elima Lani, 148 Hawai'i 233, 239, 470 P.3d 1110, 1116 (2020). On appeal, the grant or denial of summary judgment is reviewed de novo. Id.

> Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Accordingly, granting a motion to enforce a settlement agreement is appropriate if there is no genuine issue of material fact and as a matter of law the parties entered into a valid compromise agreement.

Id. (emphasis added) (citation modified). "The evidence must be viewed in the light most favorable to the non-moving party." Nuuanu Valley Ass'n v. City & Cnty. Of Honolulu, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008) (citation omitted).

The relevant record reflects that the Association's motion to enforce settlement relied on, among other things, the following evidence to establish the existence of a settlement

---

[4] In CAAP-24-334, Owners did not provide a transcript of the February 28, 2024 hearing on the Association's second motion to enforce. See HRAP Rule 10(b)(1)(A); Bettencourt v. Bettencourt, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995) ("The burden is upon appellant in an appeal to show error by reference to matters in the record, and he or she has the responsibility of providing an adequate transcript." (brackets and citations omitted)).

agreement: (1) a declaration (**Gray Declaration**) by the Association's counsel Taylor Gray asserting that Owners' former counsel, Ronald Ogomori (**Ogomori**), "confirmed" to Gray that "his clients were in agreement with the term sheet"; and (2) a November 8, 2022 emailed term sheet from Ogomori to Gray attached as Exhibit 1 to Gray's Declaration (**Exhibit 1 term sheet**), which states that the parties would work to draft the settlement agreement "[a]fter the parties have agreed to the term sheet[.]"[5]

The Exhibit 1 term sheet is reproduced below in its entirety:

> From:      Ronald Ogomori [Ogomori's email address] on
>            behalf of Ronald Ogomori
> Sent:      Tuesday, November 8, 2022 4:24 PM
> To:        [mediator's email address]; Taylor Gray
> Subject:   RE: term sheet revisions Waikiki Banyan
>
> Made a slight change in bold to Number 8:
>
> 1. By no later than December 17, 2022, [Owners] agree to remove the wall separating the one bedroom;
>
> 2. By no later than December 17, 2022, [O]wners agree to eliminate one (1) door to the bedroom so that only one point of ingress/egress to the bedroom is available;
>
> 3. By no later than December 17, 2022, the unit will not have a washer and/or dryer;
>
> 4. Between December 17, 2022 and December 20, 2022, the Association may inspect the unit to ensure compliance with the abovementioned terms;
>
> 5. A status call shall be tentatively scheduled for December 20, 2022 in case of any discrepancies or noncompliance with terms outlined above;
>
> 6. Owners shall pay $5,000.00 to the Association by no later than 30 days after execution of the settlement agreement;

---

[5]     The language, "[a]fter the parties have agreed to the term sheet" in paragraph 7, suggests that the Exhibit 1 term sheet is not a final term sheet.

> 7. After the parties have agreed to the term sheet;
> [sic] the parties will work together in good faith
> to draft the settlement agreement within 10
> **business** days;
>
> 8. Within 30 days of executing the settlement
> agreement, Owners shall apply for building permits
> for all electrical work **and/or confirm that the
> pending building application includes said
> electrical work**.  Failure to obtain building
> permits from DPP will require removal of the
> electrical components that were installed without
> permits;
>
> 9. If a dispute arises regarding any of the
> abovementioned terms and/or any terms included in
> the settlement agreement to be drafted, the
> parties agree that [retired] Judge [Marie] Milks
> [(**Judge Milks**)] shall assist to resolve those
> differences/disagreements.

(Emphases in original.)

The Gray Declaration described the purported agreement reached with the assistance of their mediator, Judge Milks, as follows:

> 11. After nearly seven (7) hours of mediation, the
> parties were able to reach an agreement.
>
> 12. The material terms of that settlement were
> memorialized in a term sheet.
>
> 13. Attached hereto as Exhibit "1" is a true and
> correct copy of the term sheet.
>
> 14. The bargained-for-exchange provided by the
> Association was that it would refrain from pursuing a
> complaint for declaratory and injunctive relief against
> [Owners], as well as waive $71,000.00 in fines owed by
> [Owners], in exchange for [Owners] restoring the Unit to a
> state substantially similar to its as-built condition by no
> later than December 17, 2022.
>
> 15. Counsel for [Owners], Ronald Ogomori, confirmed
> to me and Judge Milks that his clients were in agreement
> with the terms of the term sheet.
>
> 16. Judge Milks requested that I, as well as Mr.
> Ogomori, each receive confirmation from our clients that
> they are in agreement with the term sheet.

17. Attached hereto as Exhibit "12" is my client's confirmation that the Association agreed to the term sheet.

18. <u>Mr. Ogomori confirmed that he had received his clients' confirmation that they were in agreement with the term sheet</u>.

19. As a settlement was reached, Judge Milks concluded the mediation and congratulated us on a successful mediation.

(Emphases added.)

As noted above in paragraph 17, Gray declared that "Exhibit '12' is my client's confirmation that the Association agreed to the term sheet." The record reflects that the term sheet in Exhibit "12," which the Association's President expressly approved in a 3:48 p.m. email approximately a half-hour before the 4:24 p.m. Exhibit 1 term sheet email, contains additional differences in the terms set forth in paragraphs 4 and 8, beyond the bolded language in paragraphs 7 and 8 of the Exhibit 1 term sheet.

**(1) and (2)** Owners argue there are genuine issues of material fact as to whether the Exhibit 1 term sheet, as memorialized in the November 8, 2022 email sent by Ogomori to Gray and the mediator, represented an enforceable agreement between Owners and the Association. Owners contend that "the parties disagree if [sic] they actually entered into a contract" and that "whether [Owners] actually accepted" the Exhibit 1 term sheet "proffered during the mediation" is "[s]pecifically at issue" in this case. In support of this position, Owners argue, among other things, that Ogomori did not have written actual authority to agree to the term sheet on their behalf, as required by Hawaii Revised Statutes (**HRS**) § 605-7;[6] and Owners

---

[6]   HRS § 605-7 (2016), entitled "Control of action; power to settle," requires licensed legal practitioners to have "special authority in

told Ogomori that "the Association's demand that the Unit's improvements be removed by December 17, 2022 . . . was contingent" on certain "condition[s] precedent" such as "lack of conflicting existing rental reservations and contractor availability." Owners claim, "In sum, genuine issues of material fact exist as to whether or not the parties entered into the settlement agreement" where the record is "devoid of a signed term sheet" or "signed settlement agreement."

The Association maintains that "the [p]arties reached an agreement, as evidenced by the term sheet sent by [Owners'] counsel[,]" referencing the Exhibit 1 term sheet. The Association asserts that "the evidence in the record shows that all the essential elements of a contract are present." The Association then claims that the burden shifted to Owners to demonstrate "specific facts, as opposed to conclusory allegations, that presented a genuine issue worthy of trial"; and Owners' "conclusory" statements in their declarations that "we agreed to tentative, contingent **possible** settlement during the mediation" and "at no time did we authorize our prior attorney to make any representations to the mediator or the Association that we agreed on all material terms of a settlement with the Association[,]" were insufficient to create a genuine issue of material fact. In the alternative, the Association acknowledges that this court may remand this matter for an evidentiary hearing if we find, inter alia, "there to be a genuine issue of material fact regarding whether [Owners'] counsel had express written authority to settle this case, as he represented to both Judge Milks and opposing counsel that he had[.]" The Association supplied the record reference for the

---

writing from the practitioner's client" in order "to compromise, arbitrate, or settle such matters confided to the practitioner[.]"

7

latter statements regarding Ogomori's communication of his authority to settle as paragraphs 16, 18, and 19 of the Gray Declaration.

The Association's contention that Owners' declarations were inadequate assumes that the Association had satisfied its initial burden as a summary judgment movant, and presumes that the burden had shifted to the Owners. As we explain below, the Association did not meet its initial burden of production on the central, material disputed fact at issue, of whether a settlement agreement existed in this case.

"[S]ettlement agreements are contracts," and "the traditional requirements for contract formation must be met for an enforceable settlement agreement to exist." McKenna, 148 Hawai'i at 241, 470 P.3d at 1118 (citation omitted). If the parties have not "reached agreement upon all the essential and material terms, conditions or covenants of the agreement, [then] there was failure of mutual assent or a meeting of the minds and therefore no binding contract." Id. at 241-42, 470 P.3d at 1118-19 (quoting Carson v. Saito, 53 Haw. 178, 182, 489 P.2d 636, 638 (1971)). In McKenna, which involved a settlement dispute between a condominium unit owner and the condominium owners association and its managing agent, the supreme court vacated an order enforcing settlement on grounds that the unit owner's declaration raised genuine issues of material fact "as to the validity of her assent to the settlement conference terms" and "as to which terms were explicitly and implicitly agreed to at the settlement conference." Id. at 242, 470 P.3d at 1119.

"A motion for summary judgment should not be granted where there is a factual question as to the existence, validity, and terms of the alleged settlement agreement[.]" Gilmartin v.

8

Abastillas, 10 Haw. App. 283, 296, 869 P.2d 1346, 1352 (App. 1994) (citation omitted).  Under Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 56, the moving party must "satisfy his or her initial burden of production" to establish that "no genuine issue of material facts exists" with respect to the essential elements of the claim.  Ralston v. Yim, 129 Hawaiʻi 46, 56, 292 P.3d 1276, 1286 (2013).  "Only when the moving party satisfies its initial burden of production does the burden shift to the nonmoving party to respond" by demonstrating "specific facts, as opposed to general allegations, that present a genuine issue worthy of a trial[,]" or an evidentiary hearing, as in this case.  Id. at 56-57, 292 P.3d at 1286-87.

An affidavit or declaration supporting a motion for summary judgment "must be based on personal knowledge of the matter, i.e., admissible evidence."  Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 28, 346 P.3d 70, 97 (2015).  A declaration that "indicates that the basis for the information" is from an "external source" does not demonstrate that the statements are based on the declarant's personal knowledge.  Id. at 29, 346 P.3d at 98.  "[I]f a statement in a declaration relies upon information provided by another person . . . it is not based on personal knowledge and is inadmissible as hearsay[.]"  Id. at 27 n.31, 346 P.3d at 96 n.31.  An "affidavit consisting of inadmissible hearsay cannot serve as a basis for awarding or denying summary judgment."  Id. at 28, 346 P.3d at 97 (citations omitted).

Here, the Gray Declaration asserts that Ogomori confirmed to Gray that Owners agreed to the Exhibit 1 term sheet.  This statement was not based on Gray's personal knowledge and is inadmissible hearsay.  See id.  Thus, although Gray "declare[d] under penalty of law that the [Gray

Declaration] is true and correct[,]" this averment is insufficient to establish that Owners agreed to the Exhibit 1 term sheet.  See Miller v. Manuel, 9 Haw. App. 56, 66-69, 828 P.2d 286, 293-95 (App. 1991) (finding a supplemental memorandum alleging that "the parties reached [a settlement] agreement," averred to be true "to the best of [counsel's] knowledge," was insufficient to support a motion to enforce settlement).  Without the Gray Declaration's inadmissible statement that Ogomori confirmed to Gray that Owners agreed to the Exhibit 1 term sheet, there is no evidence of such agreement.  The Exhibit 1 term sheet was not signed by Owners, and does not reflect their approval.  In addition, the Exhibit 12 term sheet approved by the Association President contained multiple differences with, and was not identical to, the Exhibit 1 term sheet purported to represent the parties' agreement.  See McKenna, 148 Hawaiʻi at 242, 470 P.3d at 1119 (holding that "[t]he difference[s] between the proposed settlement agreement terms and the settlement conference terms evinces a genuine issue as to which terms were explicitly and implicitly agreed to at the settlement conference").

Accordingly, and viewing the evidence in the light most favorable to Owners, the Association failed to meet its initial summary judgment burden as movant to establish the existence of a settlement agreement.  See Gilmartin, 10 Haw. App. at 296, 869 P.2d at 1351.  The Circuit Court thus erred in concluding there were no genuine issues of material fact in granting the Association's first motion to enforce settlement.  In McKenna, the Hawaiʻi Supreme Court held that "a trial court errs in granting a motion to enforce a settlement agreement when genuine issues of material fact exist regarding the existence and terms of the settlement agreement" and that "the circuit

10

court must, at minimum, hold an evidentiary hearing as to those genuine issues of fact." 148 Hawaiʻi at 241, 470 P.3d at 1118. Here, because there are genuine issues of material fact as to the existence of a settlement agreement, the Circuit Court should have held an evidentiary hearing to resolve whether the parties had reached agreement "upon all of the essential and material terms," and whether there was "mutual assent" for a binding, enforceable agreement. See id. at 241-42, 470 P.3d at 1118-19 (citation omitted).

For the foregoing reasons, we vacate the April 24, 2023 First Order Enforcing Settlement and the April 4, 2024 Second Order Enforcing Settlement, both filed by the Circuit Court of the First Circuit, and remand for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, February 23, 2026.

On the briefs:

Mark G. Valencia,
for Respondents-Appellants.

Taylor W. Gray,
for Applicant-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge